IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02088-CMA-CBS
(Criminal Action No. 01-CR-00165-CMA)

UNITED STATES OF AMERICA,
        Respondent,
v.

ALBERT CELIO,
        Movant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Mr. Celio's "Motion to Vacate, Set Aside, or

Correct Sentence Pursuant to 28 U.S.C. [§] 2255" (filed February 7, 2011) (Doc. # 537). Pursuant

to the Order of Reference dated November 14, 2008 (Doc. # 484), the matter was referred to the

Magistrate Judge "to file proposed findings of fact and recommendations for disposition." The court

has reviewed the Motion, Respondent's Response (filed May 6, 2011) (Doc. # 559), the entire case

file, the exhibits, the pertinent parts of the record, and the applicable law, and is sufficiently advised

in the premises.

I.    Statement of the Case

        Defendant-Appellant Albert Celio, a Doctor of Osteopathy licensed in
Colorado, was convicted by a jury on four counts of dispensing and distributing a
controlled substance in violation of the Controlled Substances Act, 21 U.S.C. §
841(a)(1) and (b)(1)(C). Celio's convictions arose from four prescriptions for Percocet,
a Schedule II narcotic, written for an undercover police officer posing as a patient.
. . .

        According to evidence introduced at trial, the Drug Enforcement Agency
("DEA") began investigating Steve Compton, a friend and patient of Celio, for violating
federal controlled substance laws. Compton had been officially dismissed from Celio's
practice at the All Family Health Care Clinic after Compton obtained one of Celio's

prescription pads and began writing himself prescriptions for Lorcet, a Schedule III narcotic. Celio, however, continued to see Compton after hours and maintained contact with him. The DEA's investigation of Compton led to an investigation of Celio, using Compton as a "cooperating source." The Federal Bureau of Investigation ("FBI") was also involved in the DEA's investigation.

On May 11, 2000, Compton, working with the DEA, called Celio and said that a friend, "Robert Logan," needed a prescription for pain medication, but could not come in to see Celio. Compton told Celio "Logan" would give him $1000 if Celio would call in a prescription. Celio refused and said he needed to examine "Logan" in person before writing any prescriptions.

On May 18, undercover Denver police officer Roger Hogan, posing as "Robert Logan," visited Celio's office. He told Celio he needed Percocet for knee pain associated with an old football injury. Hogan told Celio he had last received a prescription from a doctor in Texas two weeks prior and that he had been taking one pill per day. Although Celio advised Hogan of other treatments for knee pain and urged him to get an x-ray, Celio wrote Hogan a prescription for thirty Percocet pills, mentioning several times that Percocet is a Schedule II narcotic that can attract notice when prescribed in high quantities.

A week later, on May 25, Hogan accompanied Compton to a lunch meeting Compton had arranged with Celio at a local establishment called the Sports Café. As pre-arranged with Hogan, Compton excused himself midway through the meeting. During Compton's absence, Hogan told Celio he needed a doctor he could "depend on." Hogan said Percocet worked well for him when he "part [ied]" and asked for three more prescriptions, mentioning that he would share some of the pills with his girlfriend, Kimmy, and others in Dallas during an upcoming trip. Celio warned Hogan that the prescriptions "ha[d] to be limited in ... volume" and couldn't be "over blatant." He also told Hogan he did not want the Percocet he prescribed to be shared with Compton. Hogan mentioned to Celio that he felt uncomfortable in the All Family Health Care Clinic itself, and asked to meet Celio outside the clinic to get "a couple month's worth" of renewal prescriptions. Celio and Hogan arranged to meet in the clinic parking lot later that same afternoon. Celio suggested Hogan page him with a "7" at the end of Hogan's phone number when he arrived. During this conversation, Hogan repeatedly mentioned to Celio he had $2000 that Celio could use for stock investments, which had been a topic of conversation between Compton and Celio earlier in the meeting.

Celio and Hogan met in the clinic parking lot about forty-five minutes after leaving the Sports Café. Although Hogan had only complained to Celio about knee pain, Celio told Hogan he would record the prescriptions on his clinic chart as treatment for degenerative joints and migraines. Celio then said, "You get headaches, I imagine.  That's legit for this." Celio told Hogan not to get "carried away" because he could not "do more than ... fifty in twelve days." He instructed Hogan, "[a] hundred a month is a good scenario," and indicated he could not go "beyond ... a hundred a month." When Hogan said he would use the pills for partying and planned to share some with his girlfriend, Celio said nothing to discourage Hogan from sharing the pills, but did say that all the prescriptions had to be in Hogan's name.

Celio ultimately wrote Hogan four prescriptions for Percocet. One prescription was dated May 25, and the others were postdated for June 1, June 15, and June 30. The first, third, and fourth prescriptions were for fifty pills each, while the second

prescription was for sixty pills to accommodate Hogan's desire to share the pills with his girlfriend. When Celio documented these prescriptions on Hogan's chart, however, the prescription dates, quantities, and strengths did not match those on the prescriptions themselves. Toward the end of the May 25 parking lot meeting, Hogan gave Celio $2000 for the prescriptions.

Hogan had no further contact with Celio for almost two months. During two meetings in mid-July 2000, Celio indicated he was worried that a federal investigation of Steve Compton could lead back to him and, according to Hogan, told Hogan he could not write any more Percocet prescriptions until things "quieted down." The DEA and FBI continued to investigate Celio and the All Family Health Care Clinic by obtaining information from pharmacies. On December 11, 2000, federal agents executed a search warrant at the clinic.

Celio was indicted on May 5, 2001, for, among other things, dispensing and distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Of the eight counts on which Celio was initially indicted, four counts were dismissed. Each of the remaining four counts corresponded with the four Percocet prescriptions Celio wrote for Hogan in the clinic parking lot on May 25. At trial, the government called five witnesses: Paul Jaster, a DEA agent involved in the investigation of Celio; Roger Hogan, the undercover Denver police officer who posed as the patient "Robert Logan"; Donna Lapetina, the owner and business manager of the All Family Health Care Clinic; Karen Lutz, the clinic's receptionist and office manager; and Thomas Gierwatoski, a pharmacist familiar with Celio. Celio did not present any evidence or witnesses in his own defense, arguing instead that the evidence was insufficient to support the charges against him and theorizing that he was engaged in an honest but misguided "reverse sting" to see if Hogan was providing pills to Compton. The jury found Celio guilty on all four counts. He was sentenced to twenty-seven months' imprisonment, followed by three years' supervised release.

*United States v. Celio*, 230 Fed. Appx. 818, 821-23 (10th Cir. April 30, 2007) (Doc. # 466).[1]

Mr. Celio was represented at preliminary hearing and arraignment by attorney Dennis Hartley, at trial and sentencing by attorney Harvey A. Steinberg, and on appeal by attorney Clifford J. Barnard. (*See* Doc. # 537 at p. 12 of 15;  Doc. # 446;  Doc. # 225, Doc. # 53).  Mr. Celio appealed his conviction on July 11, 2005.  (*See* Doc. # 433).  On appeal, Mr. Celio challenged his convictions on four grounds: "(1) the evidence presented to the jury provided an insufficient basis for his conviction; (2) the district court failed to instruct the jury that it had to find Celio "knowingly"

---

[1]     Mr. Celio is no longer in custody and his supervised release terminated in 2009.  By the instant "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. [§] 2255," he seeks reversal of his conviction.  (*See* audio recording of October 5, 2010 Motion Hearing (Doc. # 533)).

acted outside the scope of medical practice or without a legitimate medical purpose; (3) the district court abused its discretion in denying Celio's motions for a mistrial based on alleged discovery violations; and (4) prosecutorial misconduct interfered with Celio's right to a fair trial." *See Celio*, 230 Fed. Appx. at 823-31. The Tenth Circuit affirmed Mr. Celio's conviction on April 30, 2007. *See id.* at 831. Mr. Celio filed a petition for writ of certiorari with the Supreme Court on July 26, 2007. (*See* Doc. # 467). The Supreme Court denied the petition on October 1, 2007. *See Celio v. United States*, 552 U.S. 924 (2007) (Doc. # 468).

Proceeding *pro se*, on September 26, 2008 Mr. Celio filed his initial "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" with a 211-page supporting memorandum ("2255 Presentation of the Facts") and more than 500 pages of exhibits. (*See* Doc. # 472). Acknowledging its responsibility to construe Mr. Celio's documents liberally based on his *pro se* status, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), on October 2, 2008 the court ordered Mr. Celio to file an amended § 2255 motion. (*See* Doc. # 477). The court noted that Mr. Celio's initial Motion did not comply with Rule 2(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts, which provides that "[t]he motion must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule." Although Mr. Celio submitted a form § 2255 motion, he did not assert his claims on that form, referring instead to the lengthy memorandum that listed his claims. The court noted that "burying claims in the middle of a lengthy supporting memorandum does not substantially follow the form § 2255 motion appended to the Rules Governing Section 2255 Proceedings or the form § 2255 motion available from the Clerk of the Court." (*See* Doc. # 477). The court further noted that Mr. Celio failed "to set forth a short and plain statement of his claims showing that he is entitled to relief," citing Rule 12 of the Rules Governing Section 2255 Proceedings, which states that "[t]he Federal Rules of Civil Procedure . . ., to the

extent they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Applying the pleading requirements of Fed. R. Civ. P. 8(a) to Mr. Celio's Motion, the court noted that his claims were "not presented in a clear and concise manner that allows the Court and the government to know precisely how Movant believes his rights have been violated and why he believes he is entitled to relief." (*See* Doc. # 477). The court directed Mr. Celio "to file an amended § 2255 motion if he wishes to pursue his claims. Movant must present his claims clearly and concisely in a manner that substantially follows either the form appended to the Rules Governing Section 2255 Proceedings or the Court's own form motion that is available from the Clerk of the Court." (*See* Doc. # 477). The court warned Mr. Celio that failure to file an appropriate amended § 2255 Motion within the time allowed may result in denial of relief without further notice. (*See* Doc. # 477 at p. 3 of 3).

On October 31, 2008, Mr. Celio filed his second "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255." (*See* Doc. # 479). The court noted that Mr. Celio's second Motion suffered from all of the same defects pointed out by the court regarding his first Motion. (*See* Amended Order (Doc. # 488)). Mr. Celio's second Motion consisted of 35 pages encompassing 12 claims with approximately 158 purported "issues." (*See* Doc. # 479). Accompanying his second Motion, Mr. Celio submitted a "2255 Appeal Memorandum Presentation of case" (Doc. # 480), a 213-page "2255 Presentation of the Facts" (Doc. # 481), and a 36-page "Supplementation to the record – 2255" (Doc. # 485). The court again noted that "burying claims in the middle of a lengthy supporting memorandum does not substantially follow the form § 2255 motion appended to the Rules Governing Section 2255 Proceedings or the form § 2255 motion available from the Clerk of the Court" and that Mr. Celio failed "to set forth a short and plain statement of his claims showing that he is entitled to relief." (*See* Doc. # 488 (quoting Doc. # 477)). Thus, on March 18, 2009, the court ordered Mr. Celio to file on or before April 20, 2009 a second

amended § 2255 motion to comply with the requirements specified in both the March 18, 2009 and the October 2, 2008 Orders. (*See* Doc. # 488). The court warned Mr. Celio that failure to file an appropriate second amended Motion within the time allowed could result in denial of relief and dismissal of this civil action without further notice. (*See* Doc. # 488).

On April 20, 2009, Mr. Celio filed a third "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" and a motion requesting an extension of time "to submit 2255 with memorandum. . . ." (*See* Docs. # 489 and # 490). Mr. Celio's third Motion consisted of 22 pages encompassing 12 claims with numerous indistinct purported "claims." (*See* Doc. # 490). On April 27, 2009, the court granted Mr. Celio's request for an extension. (*See* Doc. # 494). On April 28, 2009, Mr. Celio filed a fourth "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255," consisting of 117 pages setting forth approximately 10 claims with dozens of subparts. (*See* Docs. # 495 and # 495-2). Mr. Celio incorporated by reference a 149-page "2255 Memorandum Statement of Case." (*See* Docs. # 495-3 and # 495-4). Mr. Celio also filed a 30-page "Addendum" on May 7, 2009. (*See* Doc. # 498).

On August 5, 2009, the Magistrate Judge issued a Recommendation that Mr. Celio's fourth Motion be denied and this civil action be dismissed with prejudice. The Magistrate Judge noted that Mr. Celio had once again "buried his claims in a lengthy Motion, supporting memorandum, and addendum that do not substantially follow the required format for § 2255 motions." (*See* "Recommendation of United States Magistrate Judge" (Doc. # 501)). The Magistrate Judge further noted:

> Mr. Celio has not set forth a short and plain statement of his claims or stated clearly and concisely how he is entitled to relief under § 2255. Mr. Celio challenges as false hundreds of statements made by the witnesses at trial, statements made outside of the trial, and exhibits. (*See, e.g.,* Doc. # 498 at pp. 2, 4-5, 12-30 of 30; Doc. # 495 at pp. 16-24, 26-44 of 55; Doc. # 495-3 at pp. 12-79 of 79; Doc. # 495-4 at pp. 1-28, 32-36, 49-54 of 70). Mr. Celio alleges dozens of ways that his defense counsel was ineffective. (*See* Doc. # 495 at pp. 46-54 of 55). Mr. Celio alleges dozens of instances of prosecutorial misconduct based on statements made at trial and in

written filings.  (*See* Doc. # 495-2 at pp. 1-24 of 62).  Mr. Celio describes the alleged prosecutorial misconduct as "a profuse onslaught of prosecution misconduct that undermined Defendant at every turn . . . ."

(*See* Doc. # 495-2 at p. 27 of 62).

On October 29, 2009, "the district court entered a supplemental order allowing Mr. Celio ten days within which to object" to the Magistrate Judge's Recommendation.  (*See* Doc. # 510).  Mr. Celio filed a Notice of Appeal on November 6, 2009.  (*See* Doc. # 505).  Mr. Celio filed his "Motion to Object" ("Objection") on November 16, 2009.  (*See* Doc. # 508).  On November 18, 2009, the Tenth Circuit Court of Appeals explained that it lacked "jurisdiction to consider an appeal at this time," and held Mr. Celio's appeal "in abeyance pending a ruling by the district court on the pending § 2255 motion."  (*See* Docs. # 510, # 511, # 512).  Mr. Celio filed a 53-page supplement to his Objection on January 20, 2010.  (*See* Doc. # 513).

On February 10, 2010, the District Judge accepted the Magistrate Judge's Recommendation, denied Mr. Celio's Motion, and dismissed this civil action with prejudice.  (*See* Doc. # 514).  On February 11, 2010, the Tenth Circuit Court of Appeals lifted the abatement of Mr. Celio's appeal and directed the filing of an amended notice of appeal.  (*See* Doc. # 516).  In an Order and Judgment dated July 10, 2010, the Tenth Circuit Court of Appeals reversed the dismissal of Mr. Celio's "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" and remanded "for the district court to provide further guidance to Celio regarding the form of his motion."  *See Celio*, 388 Fed. Appx. 758; 759 (10th Cir. July 16, 2010) (Doc. # 524 at p. 2 of 9)).

On August 11, 2010, Mr. Celio filed a "Motion for Clarification . . . " wherein he outlined numerous claims he sought to raise, such as: (1) defense counsel provided ineffective assistance at trial, (2) his co-Defendants and four witnesses for the prosecution "falsified and/or misrepresented the facts against Celio in interviews and at his trial," (3) "Judge Nottingham erred and abused his discretion prior to and at Celio's trial," and (4) prosecutors Kathleen Tafoya and

Michael Theis committed many acts of misconduct and unethical activity.  (*See* Doc. # 525).  The court set a hearing on September 24, 2010, for which Mr. Celio did not appear.  (*See* Doc. # 531). The court reset the hearing to October 5, 2010.  (*See* Doc. # 532).

At the October 5, 2010 hearing, the court advised Mr. Celio that his Motion read like a "disjointed laundry list" and identified examples of its deficiencies.  (*See* audio recording of Motion Hearing (Doc. # 533)).  Regarding Mr. Celio's Claim 3 of "Misrepresentation/False Evidence," the court explained that caselaw doesn't support granting a § 2255 motion based on inconsistencies in trial testimony that are not material.  (*See id.*).  Mr. Celio alleged that the witnesses at trial misrepresented facts, without indicating what facts and how those facts were material.  The court inquired what testimony was falsified and how was it material.  The court gave examples of alleged falsifications that would be immaterial.  To the extent that Mr. Celio alleged ineffective assistance of counsel based on failure to challenge "prosecution misconduct," the court explained that Mr. Celio must identify what the prosecutor did, when he or she did it, and what relationship or impact his or her conduct had on his conviction.  The court noted that Mr. Celio had not set forth how his allegations of unethical pretrial activity by the prosecutor were related to his bond status or in any way affected the jury's finding of guilt at trial.  The court questioned how Mr. Celio's allegation that the prosecutor communicated with the Medical Review Board could be a basis for collateral attack on his conviction.  Mr. Celio conceded that his allegations are "generalities."  (*See* audio recording of Motion Hearing (Doc. # 533)).  Mr. Celio did not cite specific legal authority applicable to his claims.  The court advised Mr. Celio that it is not required to sift through hundreds of pages of his filings to search for some factual or legal support for his allegations.  The court informed Mr. Celio that he need not be permitted unlimited opportunities to properly plead his allegations.  (*See id.*). The court thus complied with the Tenth Circuit's mandate that it "should advise a pro se litigant that, to state a claim in federal court, a complaint must explain what each defendant did to him or her;

8

when the Defendant did it; how the Defendant's action harmed him or her; and, what specific legal right the plaintiff believes the Defendant violated." *See Celio*, 388 Fed. Appx. at 761.

At the conclusion of the October 5, 2010 hearing, the court permitted Mr. Celio to file an amended motion under § 2255 no later than January 7, 2011. (*See* minutes of Motion Hearing (Doc. # 533)). On December 30, 2010, Mr. Celio sought an extension of time to file his amended motion, which the court granted up to February 7, 2011. (*See* Docs. # 534, # 536). On February 7, 2011, Mr. Celio filed his fifth "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255," which is now before the court for determination. (*See* Doc. # 537).

II.    Analysis

A.    Dismissal is Appropriate for Failure to File a Short and Plain Statement of the Claims

While "[t]he court views pro se pleadings with considerable liberality and holds such pleadings to less stringent standards than those applied to pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), even pro se litigants must follow the rules of federal procedure. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a case with prejudice for failure to comply with Rule 8(a). *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 (10th Cir. 2007). "Dismissing a case with prejudice, however, is a significantly harsher remedy . . . and we have held that, for a district court to exercise soundly its discretion in imposing such a result, it must first consider certain criteria." *Nasious*, 492 F.3d at 1162 (citations omitted). "Specifically, [t]hese criteria include (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Celio*, 388 Fed. Appx. at 760-61 (quoting *Ehrenhaus v. Reynolds*, 965

F.2d 916, 921 (citations omitted)).

The fifth iteration of Mr. Celio's § 2255 Motion continues to be overly long, prolix, vague, unspecific, and unclear.  Mr. Celio's fifth Motion is 102 pages in length.  Mr. Celio submitted with his Motion approximately 285 pages of exhibits.  (*See* Docs. # # 538-551).  Mr. Celio's Motion identifies four claims, including Claim 1 alleging ineffective assistance of trial counsel, Harvey Steinberg.  (*See* Doc. # 537 at p. 8 of 15).  Mr. Celio identifies more than twelve subparts and approximately sixty-three "incidents" of ineffective assistance in Claim 1.  (*See* Docs. # 537-1, # 537-2).  In Claim 2, Mr. Celio alleges failure to disclose material evidence by the government ("Withheld Evidence"), including five "incidents."  (*See* Doc. # 537 at p. 9 of 15;  Doc. # 537-2 at pp. 43-45 of 47 (therein identified as "Claim 3").  In Claim 3, Mr. Celio alleges "Misrepresentation/False evidence" presented by the government, including "25 incidences."  (*See* Doc. # 537 at p. 9 of 15;  Doc. # 537-2 at pp. 42-43 of 47).  In Claim 4, Mr. Celio alleges ineffective assistance of appellate counsel by "[f]ailing to raise 5 incidents of prosecution misconduct on his first brief" and "[f]ailing to raise 8 incidents of abuse of discretion in violation of Celio's 6th Amendment right."  (*See* Doc. # 537 at pp. 9-10 of 15;  Doc. # 537-2 at pp. 46-47 of 47).  Overall, Mr. Celio has asserted approximately 123 issues.  For each of these issues, Mr. Celio inserts an extensive array of quotes from the record and from outside the record, his own annotations and inferences, and citations to exhibits, attachments and line references.  (*See* Doc. # 537-1, # 537-2).   The court agrees with Respondent that the whole is "a jumble of verbiage," by which Mr. Celio appears to challenge almost every aspect of his attorneys' performance, all adverse rulings by the district court, all of the testimony of the witnesses, and every aspect of the government's trial strategy and evidence.  Once again, Mr. Celio has not set forth a short and plain statement of his claims or stated clearly and concisely how he is entitled to relief under § 2255 and has not complied with the court's orders or the pleading requirements under Rule 8(a).  The court is not required to sort through Mr. Celio's

voluminous, poorly drafted Motion in order to construct his causes of action. *See Hall*, 935 F.2d at 1110 ("we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371-72 (10th Cir. 1989) (court need not attempt to match factual assertions to elements of statute to determine if complaint states a claim for relief and defendants not required "to piece together the plaintiff's complaint"). Mr. Celio's Motion continues to suffer from many of the same defects pointed out by the court regarding his previously filed Motions.

As to the first and second factors from *Ehrenhaus*, "[t]his court has long recognized that defendants are prejudiced by having to respond to pleadings [that are] wordy and unwieldy," and "district judges . . . have their task made immeasurably more difficult by pleadings [that are] rambling . . . ." *Celio*, 388 Fed. Appx. at 761 (quoting *Nasious*, 492 F.3d at 1162–63). Mr. Celio's 102-page Motion and 285 pages of exhibits "weigh in favor of dismissal under the first two *Ehrenhaus* factors." *Cf. id.* at 761 (citation omitted).

As to the third and fourth *Ehrenhaus* factors, the court has sufficiently advised Mr. Celio "that, to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *See Celio*, 388 Fed. Appx. at 761 (citation omitted). (*See also* audio recording of Motion Hearing (Doc. # 533)). No one other than Mr. Celio is culpable for his ongoing failure to comply with the court's orders, the Local Rules of Practice of the United States District Court for the District of Colorado, and the Federal Rules of Civil Procedure.

Finally, there is no lesser sanction available under the circumstances. The court has already afforded Mr. Celio multiple amendments and numerous extensions of time. The instant Motion is Mr. Celio's fifth attempt to eliminate the deficiencies in his Motion and his filings demonstrate that

he is unable or unwilling to comply with the Federal Rules of Civil Procedure and the court's orders. (*See* Docs. ## 472-473, 479-481, 485, 490, 495, 498, 537-551).  It would be pointless to impose an alternative sanction on Mr. Celio, who has repeatedly failed to comply with previous court orders and the Federal and Local Rules.  The court's analysis of the applicable factors thus supports dismissal of this civil action with prejudice for failure to comply with the court's orders, the Local Rules of Practice of the United States District Court for the District of Colorado, and the Federal Rules of Civil Procedure.

B.    Merits

        Notwithstanding Mr. Celio's failure to set forth a short and plain statement of his claims, to state clearly and concisely how he is entitled to relief under § 2255, and to comply with the court's orders or the pleading requirements of Fed. R. Civ. P. 8(a), Respondent has attempted and the court attempts to address Mr. Celio's claims on the merits.[2]

1.    Standard of Review

        Section 2255 authorizes the sentencing court to discharge or resentence the defendant if the court concludes that it was without jurisdiction to impose the sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.  To prevail on a § 2255 Motion, the petitioner bears the burden of proof by a preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958).  *See also Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (same); *Douglas v. United States*, 245 F. Supp 2d 46, 47 (D.C.D.C. 2003) (same).  Relief under § 2255 is an extraordinary remedy.

---

        [2]      As of the date of this Recommendation, the Magistrate Judge has expended in excess of 100 hours on Mr. Celio's five iterations of his Motion.

*Bousley v. United States*, 523 U.S. 614, 621 (1998).  Section 2255 is not intended to afford a defendant an opportunity to retry the issue of his guilt or innocence.  *See Robertson v. United States*, 144 F. Supp. 2d 58, 65 (D.R.I. 2001) ("the grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he has been adjudged guilty.") (citation omitted).  *See also United States v. Fray*, 456 U.S. 152, 164 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume that he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum.").[3]

2.      Claim 1 Alleging Ineffective Assistance of Trial Counsel

Mr. Celio asserts that trial counsel provided ineffective assistance "in violation of his 5th and 6th Amendment rights by:

A) Failing to raise a defense of immunity.

B) Failing to present exculpatory tapes.

C) Failing to present defense witnesses and co-defendants Steve Compton and Lu-Ann Reyes.

D) Failing to contest or challenge false or misrepresented testimony of witnesses for the prosecution Donna Lapetina (4 incidents), Karen Lutz (4 incidents), Robert Hogan (6 incidents, and Paul Jaster (10 incidents) at trial based on their testimony and interviews.

E) Failing to present physical evidence/counter-evidence and documentation.

F) Failing to call for mistrials.

G) Failing to pursue a defense of entrapment.

H) Failing to raise a defense of necessity.

---

[3]      Respondent does not challenge the timeliness of Mr. Celio's Motion under § 2255(f) or that Mr. Celio meets the "in custody" requirement.  (*See* Response (Doc. # 559) at pp. 7-11 of 69).

I) Failing to contest or uncover withheld evidence by the prosecution (10 incidents cited).

J) Failing to contest and challenge Judge Nottingham's abuse of discretion (3 incidents cited).

K) Failing to raise, contest, or effectively challenge prosecution misconduct by (Kathleen Tafoya, Michael Theis, or its agent's) conduct indicting and prosecuting Celio before trial (8 incidents cited as outrageous conduct).

L) Failing to object or effectively challenge at trial prosecution misconduct (Kathleen Tafoya and/or Michael Theis) by:
> 1) Failing to object and present evidence demonstrating such (22 incidents cited), and
> 2) Despite objecting, failing to present evidence demonstrating such misconduct that could have or should have been known to the prosecution (9 incidents cited) (13 original incidents on direct appeal also re-cited for cumulative and prejudicial impact).

(*See* Doc. # 537 at pp. 8-9 of 15).

Under the Sixth Amendment of the U.S. Constitution, a criminal defendant has the right to effective assistance of counsel. U.S. Const., amend. VI. To determine whether the defendant has received ineffective assistance of counsel, courts apply the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the *Strickland* test, the defendant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* at 687. For the performance prong, a defendant must show that counsel's representation "fell below an objective standard of reasonableness," that is, "reasonableness under prevailing professional norms." *Id.* at 688. *See also Barkell v. Crouse*, 468 F.3d 684, 689 (10th Cir. 2006) (counsel's performance "must have been completely unreasonable, not merely wrong") (internal quotation marks and citation omitted). This review of counsel's performance is "highly deferential." *Strickland*, 466 U.S. at 689. To determine reasonableness, a court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The court must also make "a strong presumption that counsel's conduct falls within the wide range

14

reasonable professional assistance." *Id.* Mr. Celio has the burden of overcoming the strong presumption that counsel provided effective assistance. *United States v. Blackwell*, 127 F.3d 947, 955 (10th Cir. 1997) (citing *Strickland*, 466 U.S. at 689). In order to meet his burden of demonstrating entitlement to relief under § 2255, Mr. Celio must provide factual support for his allegations; conclusory allegations are not sufficient. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

For the prejudice prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In order to demonstrate prejudice, a movant under § 2255 must establish that counsel's performance rendered the proceedings "fundamentally unfair or unreliable." *LaFevers v. Gibson*, 182 F.3d 705, 724 (10th Cir. 1999) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.")).

A claim of ineffective assistance of counsel "may be resolved on either performance or prejudice grounds alone." *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000). *See also Strickland*, 466 U.S. at 697; *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998) ("This court may address the performance and prejudice components in any order, but need not address both if [petitioner] fails to make a sufficient showing of one."). If a defendant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must fail. *Upchurch v. Bruce*, 333 F.3d 1158, 1163 (10th Cir. 2003) ("Under *Strickland*, two prongs must be satisfied to show ineffective assistance of counsel in violation of the Sixth Amendment.").

A)      Failure to Raise Defense of Immunity

Mr. Celio contends that trial counsel provided ineffective assistance by failing to raise the defense of immunity.  (*See* Doc. # 537-1 at pp. 28-29).   Where the basis of the ineffective assistance claim "is the failure to raise an issue, [the Court] must look to the merits of the omitted issue. . .  If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance."  *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (citation omitted).   To the extent that Mr. Celio relies on Colo. Rev. Stat. § 12-36-118(3)(B), that section addresses immunity relating to disciplinary actions by the Colorado medical board.   This case did not involve Celio's conduct for purposes of disciplinary action by the Colorado medical board.    Mr. Celio has not demonstrated the propriety of an immunity defense under § 12-36-118(3)(B) in his federal criminal prosecution for violation of 21 U.S.C. § 841(a)(1).   To the extent that Mr. Celio relies on 21 C.F.R. § 1301.76(b), he has not explained how § 1301.76(b) provides immunity from prosecution for violation of 21 U.S.C. § 841(a)(1).  *See* 21 C.F.R. § 1301.76 (reporting requirements under the Controlled Substances Act, 21 U.S.C. §§ 821-824, 957-958 for manufacturers, distributors, and dispensers of controlled substances).

Trial counsel asserted as a theory of defense the "good-faith exception," which "protects physicians who dispense prescriptions in good faith in the course of reasonable legitimate medical practice."  *See Celio*, 230 Fed. Appx. at 824.  The jury was instructed that it could not convict Mr. Celio if it found he "acted in good faith in the course of professional medical practice."  *See Celio*, 230 Fed. Appx. at 825.  (*See also* Trial Transcript Vol. VI at p. 566).  "[T]he good faith instruction clearly informed the jury that it could not convict Celio if it found he merely made an honest effort to treat his patients in compliance with an acceptable standard of medical practice."  *Id.* at 826.  "Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance."  *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)

(internal quotation marks and citation omitted), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir. 2001). "Where it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005). Trial counsel's decision to assert the good-faith exception defense was reasonable and within the scope of effective assistance of counsel because the choice of one theory over another is "exactly the type of strategic decision the Supreme Court and this court have held is not ineffective assistance of counsel." *Young v. Sirmons*, 486 F.3d 655, 682 (10th Cir. 2007).

B)      Failure to Present Exculpatory Tapes

Mr. Celio asserts that trial counsel failed to present exculpatory tape recordings of conversations that occurred on May 24, July 18, and July 19, 2000. (*See* Doc. # 537-1 at pp. 29-31). Trial counsel chose not to play the tape recordings for the jury or to have the transcripts entered into evidence. (*See* Trial Transcript Vol. V at pp. 379-80). Rather than playing additional tape recordings, trial counsel chose to ameliorate on cross examination the evidentiary value of the tape recordings that were played for the jury by the prosecution. (*See* Trial Transcript Vol. V at pp. 362-64). Trial counsel also questioned Roger Hogan, a/k/a "Robert Logan," about the July 19, 2000 transaction. (*See id.* at pp. 366-368). Even if the tape recordings contained mitigating statements, they did not contradict the recording of the May 25, 2000 meeting between Mr. Celio and Hogan in the parking lot, which the Tenth Circuit found "could have led a reasonable jury to find that Celio was not prescribing Percocet for a legitimate medical purpose or in the ordinary course of professional practice." *Celio*, 230 Fed. Appx. at 824. The record supports a conclusion that trial counsel made a tactical decision to avoid admission of the May 24, July 18, and July 19, 2000, tape

recordings.    Mr. Celio has not shown that trial counsel's performance was "completely unreasonable, not merely wrong," *Barkell*, 468 F.3d at 689 (internal quotation marks and citation omitted), and thus has not satisfied the first prong of the *Strickland* test.

In light of the evidence contained in the audiotape of the May 25, 2000 meeting between Mr. Celio and Hogan in the parking lot, Mr. Celio also fails to demonstrate prejudice and thus fails to satisfy the second prong of the *Strickland* test.  Nothing in the record indicates that even if the May 24, July 18, and July 19, 2000 tape recordings were played for the jury the result at trial would have been different.  Mr. Celio has not shown that counsel's performance rendered the proceedings "fundamentally unfair or unreliable."  *LaFevers*, 182 F.3d at 724.

C)    Failure to Present Defense Witnesses and Co-Defendants

Mr. Celio contends that trial counsel provided ineffective assistance by failing to call Mr. Celio and eight other witnesses at trial.  (*See* Doc. # 537-1 at pp. 31-36).  "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted). *See also Marra v. Larkins*, 111 F. Supp. 2d 575, 586 n. 14 (E.D. Pa. 2000) (same).  "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Day*, 566 F.3d at 538.

While Mr. Celio relies on statements and transcripts of interviews conducted by a defense investigator prior to trial, none of these unsworn statements would have exonerated him of selling a controlled substance to the undercover agent, which was the basis of his conviction.  (*See, e.g.*,

Docs. # 537-1 at p. 32 of 40;  # 541-2 at pp. 1-5; # 542-2 at pp. 1-15;  Doc. # 547-5 at pp. 1-5; Doc. # 548-5 at pp. 1-5;  Doc. # 548-6 at pp. 1-4;  Doc. # 549 at pp. 1-5).   Rather, many of the statements concern the conduct of other persons, such as Steve Compton and Lu-Ann Reyes, who were not on trial. (*See* Docs. # 547-5 at pp. 2-4; # 548-5 at pp. 2-4).  Steve Compton was under subpoena to testify for the defense at trial but was not called to testify. (*See* Trial Transcript Vol. V at pp. 461-62).  "Generally, the decision whether to call a witness rests within the sound discretion of ambit of trial counsel." *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998). *See also Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney");  *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.").   Mr. Celio does not demonstrate that any of the witnesses would have been helpful to his defense.  The defense has no obligation to call or even to interview a witness whose testimony would not have exculpated the petitioner or would have been inconsistent with the theory of defense. *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991).  Defense counsel's conduct in this regard was a reasonable strategic decision that falls within the wide range of reasonable professional representation.   Nor does Mr. Celio's speculation regarding the testimony of these individuals carry his burden of demonstrating that failure to call these witnesses prejudiced his defense.  Mr. Celio has not shown that there is a reasonable probability that but for counsel's allegedly deficient performance, the result of the trial would have been different. *See Strickland*, 466 U.S. at 694.

D)   Failure to Challenge Misrepresentations and False Statements by Prosecution Witnesses

   Mr. Celio argues that trial counsel failed to challenge or contest inconsistencies,

misrepresentations, and false statements by government witnesses at trial.  (*See* Doc. # 537-1 at

p. 36 to Doc. # 537-2 at p. 13).  Mr. Celio's detailed account of the alleged misrepresentations and

false statements is nothing more than his personal judgment of the credibility of the witnesses.

Inconsistencies in testimony "are matters within the province of the jury." *Tapia v. Tansy*, 926 F.2d

1554, 1562 (10th Cir. 1991).  "A fundamental premise of our criminal trial system is that the jury is

the lie detector." *United States v. Sheffer*, 523 U.S. 303, 313 (1998) (internal quotation marks and

citation omitted).  "Determining the weight and credibility of witness testimony, therefore, has long

been held to be the part of every case [that] belongs to the jury, who are presumed to be fitted for

it . . . ." *Sheffer*, 523 U.S. 313 (internal quotation marks and citation omitted).  The court must

"presume that the jury's findings in evaluating the credibility of each witness are correct." *Tapia*,

926 F.2d at 1562.

Mr. Celio's claim is refuted by the record.  The record demonstrates that trial counsel

extensively challenged the government's witnesses' testimony through objections and thorough

cross-examination.  (*See* Trial Transcript Vol. IV at pp. 243-264; Vol. V at pp. 280-293, 359-375,

400-425, 428-430, 438-446).  "A defendant has engaged in effective cross-examination if the jury

had sufficient information to make a discriminating appraisal of the relevant issue." *Tapia*, 926 F.2d

at 1557 (10th Cir. 1991) (internal quotation marks and citation omitted).  As to Mr. Celio's allegation

of ineffective assistance based on the court's denial of re-cross examination of witness Lutz (*see*

Doc. # 537-2 at pp. 1-2 of 47), trial counsel fully cross-examined the witness and there was no

redirect examination.  (*See* Trial Transcript Vol. At pp. 438-445).  Mr. Celio has not demonstrated

how the failure to further cross-examine could have been ineffective.  As to Mr. Celio's argument

about the revocation of his bond (*see* Doc. # 537-2 at p. 4 of 47), he demonstrates no basis for

ineffective assistance of trial counsel.  Mr. Celio has not satisfied either prong of the *Strickland* test,

in that he has not shown that trial counsel's performance was "completely unreasonable, not merely

wrong," *Barkell*, 468 F.3d at 689 (internal quotation marks and citation omitted), nor has he shown a reasonable probability that, but for trial counsel's allegedly insufficient cross-examination, the result of the trial would have been different.  *Strickland*, 466 U.S. at 694.

Further, claims that testimony was false or lacking in credibility or that evidentiary decisions were erroneous are not cognizable in a § 2255 motion because these claims should have been addressed in a direct appeal.  *See Gaitan v. United States*, 317 F.2d 494, 495 (10th Cir. 1963) ("errors in the admission of evidence must be reviewed on appeal and do not afford a basis for collateral attack);  *United States v. Gaither*, 300 Fed. Appx. 612, 614 (10th Cir. 2008) (claim that government knowingly used perjured testimony procedurally barred).  Mr. Celio's claim of false testimony at trial is an impermissible attempt to retry the issue of guilt that already has been determined by the jury.

E)     Failure to Present Evidence.

Mr. Celio alleges that trial counsel failed to present evidence in support of his defense.  (*See* Doc. # 537-2 at pp. 13-15).  Mr. Celio's allegation is contradicted by the record.  After advisement by the court, Mr. Celio elected not to testify at trial, stating on the record that "I believe everything has been presented, and I wouldn't be able to add anything further that would be what hasn't already been presented." (*See* Trial Transcript Vol. VI at pp. 466-469).  Mr. Celio's allegations of evidence that should have been presented do not controvert the evidence which the Tenth Circuit found "could have led a reasonable jury to find that Celio was not prescribing Percocet for a legitimate medical purpose or in the ordinary course of professional practice."  *Celio*, 230 Fed. Appx. at 824.  Mr. Celio fails to demonstrate that trial counsel's assistance was  unreasonable or not the result of sound trial strategy or a reasonable probability that, but for the failure to present evidence, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.

F)      Failure to Call for Mistrials

Mr. Celio alleges trial counsel was ineffective for failing to move for a mistrial more often, including an allegation that he should have moved for mistrial sooner concerning Agent Jaster's testimony.  (*See* Doc. # 537-2 at pp. 15-16).  Trial counsel twice moved for a mistrial and once renewed the motion.  (*See* Trial Transcript Vol. V at pp. 269-278, 299-300, 457-58).  The decision not to seek a mistrial is usually a strategic one.  *See, e.g., Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir. 2005) (where trial counsel's decision not to seek mistrial was based on deliberate strategy, that decision, "while debatable, was not objectively unreasonable");  *United States v. Moran*, 393 F.3d 1, 10 (1st Cir. 2004) ("There are both tactical and strategic reasons why a party might seek a judgment of acquittal but not a new trial (for example, a fear that the prosecution will learn from its mistakes and put in a more persuasive case the second time around . . .)");  *United States v. Hemphill*, 76 Fed. Appx. 6, 16, 2003 WL 21872509, *7 (6th Cir. 2003) (unpublished) (finding absence of plain error based on failure to move for mistrial where "defendant's counsel may have decided to forego a motion for mistrial because, as a strategic decision, he preferred to test the government's case with the jury that was impaneled or may not have wished to emphasize the gratuitous commentary by a motion to strike") (footnote omitted);  *United States v. Washington*, 198 F.3d 721, 723 (8th Cir. 1999) ("ultimate decision on whether to request a mistrial . . . is a strategic decision for counsel").  A mistrial is a "drastic sanction."  *United States v. Templeton*, 481 F.3d 1263, 1265 (10th Cir. 2007).  "Not all improper comments require a new trial.  Rather, only comments which threatened to deny a defendant a fair trial require such sanction."  *Id.*

The court has carefully reviewed the trial proceedings and concludes that trial counsel performed reasonably and effectively under prevailing professional norms.  He succeeded in excluding from the trial evidence far more prejudicial than the evidence alleged herein. He conducted a vigorous defense by cross-examination and arguments addressed against the

admissibility of damaging evidence.  Other than listing several instances at which he believes trial counsel should have moved for a mistrial, Mr. Celio makes no showing under *Strickland* that trial counsel's assistance was unreasonable or not based on sound trial strategy.  Mr. Celio also makes no showing of a reasonable probability that, but for the failure to make additional motions for a mistrial, the result of the trial would have been different.  466 U.S. at 694.

On direct appeal, the Tenth Circuit found no abuse of the trial court's discretion in denying the motions for a mistrial.  *See Celio*, 230 Fed. Appx. at 826-27.  Failure to make a motion unwarranted in law is not ineffective assistance of counsel.  *See Flieger v. Delo*, 16 F.3d 878, 887 (8th Cir. 1994) (petitioner failed to show how counsel's failure to make baseless objections was objectively unreasonable and his ineffective assistance of counsel claim failed).

G)      Failure to Pursue an Entrapment Defense

Mr. Celio alleges that trial counsel's failure to present an entrapment defense at trial amounted to ineffective assistance.  (*See* Doc. # 537-2 at pp. 16-18).  "Whether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong."  *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotations omitted).  The record indicates that trial counsel made an informed, strategic choice not to pursue an entrapment defense after being advised by the trial court that the government would have the opportunity to present evidence to rebut the defense.  (*See* Trial Transcript Vol. V at pp. 463-64, 469-74).  Presenting an entrapment defense would have opened the door for more damaging evidence against Mr. Celio.  (*See* Trial Transcript Vol. V at pp. 473 ("because I don't want all the other bad acts to come in that I fought so hard to keep out during this trial").  *See also, e.g., Ross v. Parker*, 2008 WL 5272796 *5 (10th Cir. Dec. 19, 2008) ("Pursuing such a defense would have

opened up the door for more negative evidence . . . , decreasing the likelihood of a favorable verdict. Considering these circumstances, it was reasonable for Mr. Ross's counsel to not pursue an entrapment defense."). Mr. Celio provides no facts to support his contention that an entrapment defense would have been a valid defense in this case. "A defendant is not entitled to an instruction which lacks a reasonable legal and factual basis." *United States v. Al-Rekabi*, 454 F.3d 1113, 1122 (10th Cir. 2006).

H)    Failure to Raise the Defense of Necessity

Mr. Celio alleges that trial counsel provided ineffective assistance by failing to assert a defense of necessity. (*See* Doc. # 537-2 at pp. 18-20). In order to be entitled to a necessity defense, Mr. Celio had to show at trial that: "(1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct causal relationship is reasonably anticipated to exist between [his] action and the avoidance of the harm." *Al- Rekabi*, 454 F.3d at 1121. The defense "can be asserted only by a defendant who was confronted with . . . a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts." *Id.* (citing *United States v. Vigil*, 743 F.2d 751, 756 (10th Cir. 1984) (to raise necessity defense, defendant must establish he faced "an unlawful and present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury")); *United States v. Lewis*, 628 F.2d 1276, 1279 (10th Cir. 1980) (defense of necessity is "based on a real emergency" and "may be asserted only by a defendant who was confronted with a crisis as a personal danger"). District courts must "strictly and parsimoniously" apply the defense. *United States v. Baker*, 508 F.3d 1321, 1326 (10th Cir. 2007) (internal quotation marks omitted). A defendant "must prove his claimed defenses by a preponderance of the evidence." *Al-Rekabi*, 454 F.3d at 1122.

The facts of this case did not meet the elements of the necessity defense.  There was no evidence that Mr. Celio had to sell the controlled substances in order to avoid personal harm. Further, a necessity defense would have contradicted the "reverse sting" defense that Mr. Celio presented at trial.  (*See Celio*, 230 Fed. Appx. at 824 ("Celio attempts to justify his actions by arguing to this court, as he did to the jury, that his actions were part of a 'reverse sting' to see whether Hogan was providing drugs to Compton.  Celio explained to the jury that the 'reverse sting' idea grew from his frustration at the DEA's apparent lack of progress in investigating Compton's theft and use of Celio's prescription pad to write unauthorized narcotic prescriptions. By finding Celio guilty, however, the jury implicitly rejected the applicability of the good-faith defense, as well as Celio's "reverse sting" theory. For the foregoing reasons, therefore, this court determines the evidence was sufficient to support the jury's verdict and concludes the district court did not err in denying Celio's motion for a judgment of acquittal.")).  The choice of one defense theory over another is "exactly the type of strategic decision the Supreme Court and this court have held is not ineffective assistance of counsel."  *Young*, 486 F.3d at 682.  Mr. Celio has failed to show that trial counsel's performance was unreasonable or show a reasonable probability that the result of the trial would have been different if trial counsel had asserted a defense of necessity.

l)      Failure to Uncover Evidence Withheld by the Prosecution.

Mr. Celio raises ten allegations that trial counsel was ineffective for failing to uncover material evidence withheld by the prosecution.  (*See* Doc. # 537-2 at pp. 20-24).

1.      Forgeries by Steve Compton

Jurors heard testimony from several witnesses concerning Steve Compton's dismissal from the clinic because he had stolen prescription pads and forged doctors' signatures to obtain

painkillers.  (*See, e.g.*, Trial Transcript Vol. V at pp. 288-89, 350, 393).  The jury was apprised of Steve Compton's bad character.  Because Steve Compton did not testify at trial, impeachment of his testimony was not at issue.  Even if Compton had testified, his forgeries would only have been cumulative to evidence already admitted about his bad conduct.  Mr. Celio has not shown that the evidence of forgeries by Compton would have altered the outcome of the trial.

2.      "Drug Movement Report"

Thomas Gierwatoski testified that he kept a file on Mr. Celio's narcotics prescribing practices between 1997 and 2000.  (*See* Trial Transcript  Vol. V at p. 455).  Defense counsel objected on grounds of relevance.  (*See id.* at p. 456).  The objection was sustained.  *Id.*  Defense counsel requested that the prosecutor's question be stricken and the district court replied "that the jury would be instructed that the way a lawyer words a question is not evidence in the case." *Id.*  Mr. Celio now seeks a report containing similar information on the basis that it may be exculpatory to his case.  In addition to this inconsistent position, Mr. Celio has not established that the report contained exculpatory evidence which would have altered the outcome of the trial.

3.      Bates Numbered Documents 9003 to 9097 and 9107 to 9121.

Mr. Celio's allegation of missing documents is unsupported by evidence that these documents were improperly withheld from him.  (*See* Doc. # 548 at pp. 1-4 of 5).  The evidence at trial included the entire audiotape of the July 19, 2000 Sports Café meeting between Robert Hogan and Mr. Celio.  (*See* Trial Transcript Vol. V at pp. 315-332).  The transcript was also discussed at trial.  (*See id.*).

4.      Tapes Relating to May 24, 2000 Conversation between Compton and Celio

Mr. Celio asserts that a follow-up tape of a conversation between him and Compton on May 24, 2000 would have corroborated his claim that Hogan intended to bring money the following day to pay him for stock, not drugs.  The testimony of Agent Jaster and Roger Hogan and the May 25, 2000 audiotape directly contradict this claim.  Mr. Celio has not shown that but for this audiotape, the outcome of his trial would have been different.


5.      Missing minutes on 5/25/00 tape.

Mr. Celio alleges that the May 25, 2000 tape was incomplete.  Testimony indicated that the agent's preamble had been deleted from the tapes.  (*See* Trial Transcript Vol. IV at pp. 194-95).  No contemporaneous objection was made.  The defense received copies of the tapes before trial, the tapes were played at trial for the jury and were submitted as an exhibit on appeal with no previous allegation of any missing dialog.  There is no evidence and nothing more than Mr. Celio's conclusory allegation to support this allegation.


6.      All Taped Interviews between DEA/FBI or its Agents and Compton

Mr. Celio alleges that unspecified taped interviews were withheld by the DEA/FBI.  The evidence at trial indicated that not all interviews between DEA/FBI agents and witnesses/informants were taped.  Instead, written reports were generated.  (*See* Trial Transcript Vol. V at p. 303). All written reports of interviews were provided to the defense.


7. & 8.      Compton and Spedding's Medical Records and AFHC's Hard Drive Computer

Mr. Celio alleges that the medical records of Steve Compton and Doug Spedding would have established that they were obtaining prescriptions from him legitimately.  The evidence at trial

demonstrated that law enforcement agents did not seize Compton's or Spedding's medical records. (*See* Trial Transcript Vol. IV at pp. 238-39, Vol. V at pp. 410-12).   Even if Compton's medical records were available, Mr. Celio had ceased writing prescriptions for Compton in 1999, before the offense conduct that occurred in 2000.   (*See* Trial Transcript Vol. IV at pp. 247-48).   As neither Compton nor Spedding testified at trial, there was no legitimate impeachment purpose for obtaining their medical records.   Any mention of Spedding's relationship to Mr. Celio was ruled inadmissible by the court pursuant to defense counsel's objection.   (*See* Trial Transcript Vol. V at pp. 424-25). Mr. Celio has not shown that the medical records would have altered the outcome of his trial.

9.      Luann Reyes and Donna Lapetina's Depositions in Case No. 99-cv-1776

Ms. Reyes filed and settled a civil action for breach of contract against Ms. Lapetina and All Family Health Care, Inc. in the Jefferson County District Court, Case No. 1999CV1776. The United States was not a party to that case and Mr. Celio presents no evidence that the government possessed or used any information obtained from that case.   Mr. Celio's allegation is nothing more than pure speculation.

10.      Taped Records of DEA Phone Conversations with All Family Health Care on March 16, 2000 or with Donna Lapetina

Written reports relating to the interview of Donna Lapetina were provided to Mr. Celio prior to trial.   Ms. Lapetina was separately interviewed by the defense.   (*See* Trial Transcript Vol. V at pp. 275, 415;  Doc. # 543-3).   Ms. Lapetina testified that Mr. Celio wrote Steve Compton's daughter a prescription between 1999 and May of 2000.   (*See* Trial Transcript Vol. V at pp. 398-99).   Ms. Lapetina did not testify as to any alleged telephone conversations occurring on March 16, 2000. There is no evidence that the alleged conversations were taped, that they were relevant, or that tape recordings would have altered the outcome of the trial.

In sum, a review of Mr. Celio's allegations reveals that the information he contends was withheld was either previously disclosed, was irrelevant and/or not discoverable, or not available. Mr. Celio's conclusory allegations do not establish that the trial was fundamentally unfair or unreliable or that he was prejudiced by any failure to obtain such evidence.

J)      Failure to Challenge the District Court's Abuse of Discretion

Mr. Celio alleges three erroneous rulings by the trial court that were not presented on direct appeal because trial counsel did not object to them at trial.  (*See* Doc. # 537-2 at pp. 24-27).  In his first contention, Mr. Celio appears to challenge the trial court's ruling on defense counsel's second motion for mistrial.  (*See* Trial Transcript Vol. V at pp. 457-58).  Mr. Celio's challenge to the inaudibility of one of the audiotapes was addressed on direct appeal and found to be without merit. *See Celio*, 230 Fed. Appx. at 827.  A defendant may not allege issues in a § 2255 motion which have already been challenged on direct appeal.  *See United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) ("Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal.") (citation omitted).  Nor can the failure to raise an issue that has no merit be considered ineffective assistance of counsel.  *Orange*, 447 F.3d at 797.

In his second contention, Mr. Celio challenges trial counsel's effectiveness for allowing the prosecution to make certain evidentiary proffers in front of the jury.  Both prior to trial and prior to deliberations, the court instructed the jury that "statements, assertions and arguments of the lawyers are not to be taken as evidence in the case." (*See* Trial Transcript Vol. IV at p. 119, Vol. VI at p. 549 ("the statements and arguments of the lawyers are not evidence in the case unless they are made as a stipulation of fact.")).  The trial court also advised the jury to avoid being "diverted by the lawyers' possibly suggestive statements." (*See id.*, Vol. VI at p. 549).  In light of  these curative instructions, Mr. Celio has not demonstrated that trial counsel's failure to object was

unreasonable. *See, e.g., Buehl v. Vaughn*, 166 F.3d 163, 176 (3d Cir. 1999) (agreeing with state court's conclusion that "[b]ecause the statements were fleeting, . . . trial counsel may have wished to avoid emphasizing what might have gone relatively unnoticed by the jury." ) (internal quotation marks omitted); *United States v. Grunberger*, 431 F.2d 1062, 1069 (2d Cir. 1970) ("it is understandable that a defense counsel may wish to avoid underscoring a prejudicial remark in the minds of the jury by drawing attention to it" through an objection); *Gatto v. Hoke*, 809 F. Supp. 1030, 1039 (E.D.N.Y. 1992) ("counsel's failure to object to the prosecutor's summation represents his tactical decision to avoid underscoring the prosecutor's statements so as to draw the jury's attention to them").  Nor has Mr. Celio demonstrated any probability that these statements changed the outcome of the trial.

In his third contention, Mr. Celio argues that trial counsel was ineffective for allowing the prosecution in closing to portray him as Compton's source. The record reflects that trial counsel objected to this statement and the objection was overruled.  (*See* Trial Transcript Vol. VI at pp. 528-29).  On direct appeal, the Tenth Circuit found that "there was no error in the prosecutor's use of the word 'source' or the district court's response to Celio's objection." *Celio*, 230 Fed. Appx. at 831.  Mr. Celio has not satisfied either of the two prongs of the *Strickland* test with regard to his third contention.

K)      Failure to Object to Outrageous Government Conduct Before Trial

Mr. Celio raises eight allegations that trial counsel provided ineffective assistance by failing to object to multiple acts of outrageous conduct by the government.  (See Doc. # 537-2 at pp. 27-33).

The defense of outrageous governmental conduct "is based on the Due Process Clause of Fifth Amendment" and "is an extraordinary [one] reserved for only the most egregious

circumstances." *United States v. Johnson*, 130 F.3d 1420, 1429 (10th Cir. 1997) (internal quotation marks and citation omitted).  Government conduct is outrageous if "considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." *Id.*  "To succeed on an outrageous conduct defense, the defendant must show either: (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994) (citation omitted).  "[I]t is not outrageous for the government to infiltrate an ongoing criminal enterprise, or to induce a defendant to repeat, continue, or even expand previous criminal activity." *Id.*  "In inducing a suspect to repeat or expand his criminal activity, it is permissible for the government to suggest the illegal activity, provide supplies and expertise, and act as both a supplier and buyer of illegal goods." *Id.*

There is no evidence in the record to suggest that the government induced Mr. Celio to become involved in the unlawful distribution of a controlled substance or substantially coerced him into committing a crime.  To the extent that Mr. Celio alleges that agents coerced or induced witnesses, co-defendants, and their "significant others" to offer misleading and false statements, only Donna Lapetina and Karen Lutz testified at trial.  Nothing in the record establishes that these witnesses' testimony was false or misleading.  Compton did not testify at trial.  Mr. Celio's allegation that Compton was coerced into setting up the May 25, 2000 meeting is nothing more than pure speculation.  Mr. Celio also alleges Roger Hogan lied to him about having knee pain.  "To obtain evidence of certain crimes undercover agents frequently must participate in illegal activities." *United States v. Warren*, 747 F.2d 1339, 1342 n. 4 (10th Cir. 1984) (internal quotation marks and citation omitted).  Government agents may "employ appropriate artifice and deception to ferret out illegal activities." *Id.*  Other than Mr. Celio's pure speculation that agents "possibly prepped" the testimony of witnesses, there is nothing in the record that supports this allegation.  Mr. Celio alleges

that agents relied on evidence obtained from Compton, an incredible witness.  Mr. Celio was convicted at trial in the absence of any testimony by Compton.  Mr. Celio alleges outrageous conduct based on agents' contact with the Walsenberg hospital and the Colorado medical board and the conduct of Pre-trial Services officers.  He makes an attenuated argument regarding the loss of his employment.  He presents no more than his own speculation as to any effect on the outcome of his trial.  Mr. Celio's outrageous government conduct defense is without merit and, thus, trial counsel's failure to object was not ineffective assistance.  *See Orange*, 447 F.3d at 797.

L)      Failure to Object to Prosecutorial Misconduct During Trial.

In the first part of this claim, Mr. Celio raises eight instances of prosecutorial misconduct to which he alleges trial counsel failed to raise an objection.  (*See* Doc. # 537-2 at pp. 33-42).

Instances 1, 4, 5, and 6 address statements made by the prosecution during opening or closing statements.  The trial court advised the jury, both prior to trial and prior to deliberations, that "statements, assertions and arguments of the lawyers are not to be taken as evidence in the case" and to avoid being "diverted by the lawyers' possibly suggestive statements." (*See* Trial Transcript Vol. IV at p. 119, Vol. VI at p. 549).  Juries are presumed to follow the instructions they are given. *See United States v. Wacker*, 72 F.3d 1453, 1467 (10th Cir. 1995) ("juries are presumed to follow their instructions");  *United States v. Castillo*, 140 F.3d 874, 883 (10th Cir. 1998) ("A central assumption of our jurisprudence is that juries follow the instructions they receive.").  Mr. Celio has not shown that the outcome of his trial would have been different if trial counsel had objected to the prosecution's allegedly improper statements.

In instance 2, Mr. Celio alleges that trial counsel failed to object to the prosecutor's offer of proof concerning a "coverup."  The record contradicts this allegation.  Trial counsel objected to the proffer and the court sustained the objection.  (*See* Trial Transcript Vol. IV at p. 233).  In instance

3, Mr. Celio mentions the prosecutor's proffer of Exhibit No. 28.  (*See* Trial Transcript Vol. V at pp. 307-08).   This exhibit was offered to rebut testimony on cross-examination that Mr. Celio had contacted the DEA about Steve Compton's forgeries (*see* Trial Transcript Vol. V at p. 288) and was not improper.   In instance 7, Mr. Celio alleges that trial counsel failed to object to the prosecution's nondisclosure of Karen Lutz's whereabouts.   When trial counsel raised this at trial, he was afforded an opportunity to interview Ms. Lutz before her testimony and cross-examined her.   (*See* Trial Transcript Vol. V at pp. 278-79, 438-45).   *See, e.g.*, *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989) (government "is not obliged under *Brady* to furnish a Defendant with information which he already has or, with any reasonable diligence, can obtain himself").   Regarding instance 8, Mr. Celio alleges that trial counsel allowed the prosecution to advocate contradictory statements made by their witnesses.   However, the record reveals that trial counsel vigorously cross-examined each of the government's witnesses.   It was for the jury to decide whether the witnesses' statements conflicted with other evidence.   *See Tapia*, 926 F.2d at 1563 (although witnesses changed their testimony several times, "the jury heard all versions" and witnesses "were thoroughly impeached.   It was for the jury to decide which version to believe.") (citation omitted).

In the second part of this claim, Mr. Celio alleges nine incidents of prosecutorial misconduct to which he alleges trial counsel objected but "failed to present evidence" that the "prosecution's statements were overbroad, prejudicial and not supported by the evidence."  (*See* Doc. # 537-2 at pp. 36-37 of 47).

In parts 1) A) through C), Mr. Celio alleges that trial counsel failed to present evidence that the prosecutor asked Ms. Lapetina questions that he knew would be objected to and sustained.   This claim is without any support in the record.   Trial counsel objected to these questions on grounds of relevance and the objections were sustained.  (*See* Trial Transcript Vol. V pp. 392, 451).   Part B) of Mr. Celio's claim was presented at the bench and therefore outside of the presence of

the jury. (*See id.* at pp. 427-28). In parts 2) and 4) A)-B), Mr. Celio's allegations relate to the prosecution's closing argument. Closing arguments do not constitute evidence, and the jury was so advised. (*See* Trial Transcript Vol. VI at p. 549). Regarding part 3), trial counsel objected to the prosecution's questions concerning Mr. Celio's examination of Roger Hogan. (*See* Trial Transcript Vol. V at pp. 322-25). Regarding part 4) C), Mr. Celio objects to the prosecution's proffers. Evidentiary proffers are permissible. Many of trial counsel's objections were sustained. (*See, e.g., id.* at pp. 427-28). The jury was instructed to not only disregard the statements of counsel, but also to disregard "[a]ny evidence as to which an objection is sustained." (*See* Trial Transcript Vol. IV at p. 119).

Mr. Celio cites thirteen additional incidents of prosecutorial misconduct that he claims prejudiced him. (*See* Doc. # 537-2 at pp. 37-39 of 47). The first eight of these claims were raised on direct appeal and rejected. *See Celio*, 230 Fed. Appx. at 829-31. As these issues were raised and rejected on direct appeal, Mr. Celio is foreclosed from reasserting them in his § 2255 motion. *See Warner*, 23 F.3d at 291 (a defendant is precluded from alleging issues in a 28 U.S.C. § 2255 motion which have already been addressed on direct appeal); *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) (same). Mr. Celio's ninth allegation concerns a "[s]tatement about sharing medication with Celio," followed by another statement to which trial counsel did not object. (*See* Trial Transcript Vol. IV at p. 168). Mr. Celio has not demonstrated ineffective assistance of counsel based on these statements. Mr. Celio's next four instances of ineffective assistance occurred during opening and closing arguments. Again, the jury was instructed to disregard the arguments of counsel (*see* Trial Transcript Vol. IV at p. 119, Vol. V at p. 549) and the jury is presumed to follow the instructions it is given. *Wacker*, 72 F.3d at 1467; *Castillo*, 140 F.3d at 883. Mr. Celio previously raised instances 10), 11), 12), and 13) in his reply brief on direct appeal. *See Celio*, 230 Fed. Appx. at 828 n. 4. (*See also* Appellate Case No. 05-1330, Amended Reply Brief of Appellant

34

Celio filed on October 26, 2006).  Section 2255 motions are not available to test the legality of matters which were or should have been raised on direct appeal.  *Warner*, 23 F.3d at 291 (citation omitted).

In sum, Mr. Celio's ineffective assistance claims based on prosecutorial misconduct are largely founded on claims that his trial counsel was ineffective for failing to pursue in pretrial and trial proceedings certain issues that were the subject of the Tenth Circuit's opinion in *Celio*, 230 Fed. Appx. at 8.  Mr. Celio may not relitigate issues rejected on direct appeal by re-labeling those issues as claims of ineffective assistance of counsel.  To the extent the ineffective assistance of counsel claims are not merely re-labeled issues rejected on direct appeal, Mr. Celio does not demonstrate a valid basis for relief under § 2255.

3.     Claims 2 and 3 Alleging Prosecution Withheld Evidence and Presented False Evidence

In Claims 2 and 3, Mr. Celio alleges that the prosecution withheld evidence and presented false evidence.  (*See* Doc. # 537-2 at pp. 42-46 of 47).  Mr. Celio's Claims 2 and 3 should have been raised on direct appeal.  "A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed."  *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994) (citations omitted).  *See also United States v. Barajas-Diaz*, 313 F.3d 1242, 1245 (10th Cir. 2002) ("failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review").  "Cause" requires a showing that "some objective factor external to the defense impeded" the ability of the petitioner to comply with the procedural rule in question.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986), *superseded by statute on other grounds*, Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, Apr. 24, 1996, 110 Stat. 1214.  A fundamental

miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.  Mr. Celio presents no evidence or argument to show either cause or a fundamental miscarriage of justice.  The facts on which Mr. Celio's claims are based were known or available to Mr. Celio when judgment was entered and could have been raised on direct appeal.  There is nothing in the record that suggests Mr. Celio is actually innocent of the offenses for which he was convicted.  Claims 2 and 3 are procedurally barred.

Even if Mr. Celio's claims were not procedurally barred, the claims fail on the merits.

### a. Misrepresented/False Statements

Mr. Celio reiterates the allegations made in Claim 1) D).  (*See* Doc. # 537-2 at p. 42 of 47). First, Mr. Celio's account of the alleged misrepresentations and false statements is nothing more than his personal judgment of the credibility of the witnesses.  Mr. Celio is not entitled to relief where he merely makes conclusory allegations without factual support.  *Fisher*, 38 F.3d at 1147.

Second, inconsistencies in testimony "are matters within the province of the jury." *Tapia*, 926 F.2d at 1562.  "A fundamental premise of our criminal trial system is that the jury is the lie detector." *Sheffer*, 523 U.S. at 313 (internal quotation marks and citation omitted).  "Determining the weight and credibility of witness testimony, therefore, has long been held to be the part of every case [that] belongs to the jury, who are presumed to be fitted for it . . . ." *Sheffer*, 523 U.S. 313 (internal quotation marks and citation omitted).  The court must "presume that the jury's findings in evaluating the credibility of each witness are correct." *Tapia*, 926 F.2d at 1562.

Third, Mr. Celio's claim is not supported by the record.  There is no evidence that the prosecution knew that the challenged testimony was false. Thus, introduction of such testimony was not improper.  *See, e.g., United States v. Caballero*, 277 F.3d 1235, 1244 (10th Cir. 2002) (prosecutor's introduction of allegedly perjured testimony by government witness not improper

because, even if testimony was perjured, no evidence prosecutor knew testimony was false).  *See also Knighton v. Mullin*, 293 F.3d 1165, 1174 (10th Cir. 2002) (inconsistency between witness's testimony at trial and his earlier interview not improper because did not support inference that prosecutor knowingly presented false evidence).

Finally, claims that testimony was false or lacking in credibility or that evidentiary decisions were erroneous are not cognizable in a § 2255 motion because these claims should have been addressed in a direct appeal. *See Gaitan*, 317 F.2d at 495 ("errors in the admission of evidence must be reviewed on appeal and do not afford a basis for collateral attack);  *Gaither*, 300 Fed. Appx. at 614 (claim that government knowingly used perjured testimony procedurally barred).

b.     Withheld Evidence

Mr. Celio alleges that the government failed to disclose material exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  "To establish a violation of *Brady* . . . , a defendant must demonstrate (1) the prosecution suppressed evidence, (2) the evidence was favorable to defendant, and (3) the evidence was material." *United States v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir. 1999). For the evidence to be material, there must be "a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (internal quotation omitted).  *See also United States v. Bagley*, 473 U.S. 667, 682, 685 (1985) ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."). The government is only required to provide a defendant with exculpatory information of which the prosecution is aware, *United States v. Flores*, 540 F.2d 432, 438 (9th Cir. 1984), and "that meets the appropriate standard of materiality." *United States v. Burger*, 773 F. Supp.1419, 1426 (D. Kan. 1991) (citation omitted).

The movant has the burden of establishing the materiality of the information he seeks. *United States v. Kennedy*, 819 F. Supp. 1510, 1518 (D. Colo. 1993).

Mr. Celio speculates that a tape recording might have contained his statement to Roger Hogan that "he didn't have his prescription pad, and he would have to go back to the office" but that this statement did not appear in the transcript of the tape recording that the defense received in discovery. (*See* Doc. # 537-2 at p. 43-44 of 47). The defense received copies of the tapes before trial, the tapes were played at trial for the jury and were submitted as an exhibit on appeal with no allegation of any missing dialog. There is no evidence and nothing more than Mr. Celio's speculation to support this allegation.

The testimony at trial indicated that a facsimile dated February 18, 2000 received from Mr. Celio's office, All Family Health Care, by Agent Jaster led to the investigation of Steve Compton. (*See* Trial Transcript Vol. IV at p. 170). Mr. Celio has not demonstrated that the government improperly failed to disclose to him a facsimile that was generated by his own office.

Mr. Celio alleges that health care fraud by Donna Lapetina and Karen Lutz referenced in a a letter dated September 28, 2007 should have been disclosed to the defense. (*See* Doc. # 550-4 at p. 1 of 1). The letter referenced documents seized in December of 2000. Mr. Celio's trial concluded on or about April 6, 2005, two years before the letter was generated. Mr. Celio has not demonstrated that disclosure of investigative files pertaining to All Family Health Care prior to December 2000 would alter the result of his trial. *See, e.g., Bedewi v. United States*, 583 F. Supp. 2d 72, 80 (D.D.C. 2008) (defendant failed to explain how accounting improprieties would alter his own culpability).

Mr. Celio alleges he was entitled to Agent Jaster's "contemporaneous notes" taken during an interview. (*See* Trial Transcript Vol. IV at pp. 246-47). Mr. Celio has no specific entitlement to agents' notes. *See* Fed. R. Crim. P. Rule 16(a)(2) (specifically exempting from discovery "reports,

memoranda or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case"); *United States v. Lane*, 574 F.2d 1019, 1022 (10th Cir. 1978) ("Notes of undercover activity may well contain impressionary matter involving diverse persons. We think it would be a judicial invasion into proper law enforcement to require the preservation of such notes and are convinced that to reverse this case as appellant urges at this late date would thwart justice."); *United States v. Rewald*, 889 F.2d 836, 867 (9th Cir. 1989) (reports that embody only the agent's "epitomization, interpretation, or impression of an interview are not producible."), *modified on other grounds*, 902 F.2d 18 (9th Cir.1990). *See also United States v. Smaldone*, 484 F.2d 311, 317 (10th Cir. 1973) (notes of agents are generally not discoverable); *United States v. Brothers Construction Co. of Ohio*, 219 F.3d 300, 316 (4th Cir. 2000) (same); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) (same); *United States v. Malone*, 49 F.3d 393, 396 (8th Cir. 1995) (same); *United States v. Scotti*, 47 F.3d 1237, 1249 (2d Cir. 1995) (same). Agents' notes are routinely destroyed once a finalized report is generated. *See United States v. Spencer*, 618 F.2d 605, 606-07 (9th Cir. 1980) (retention of all rough notes made during an investigation would impose an enormous and unreasonable administrative burden)*; United States v. Shovea*, 580 F.2d 1382, 1390 (10th Cir. 1978) (approving of the administrative practice of investigators routinely destroying rough notes after the preparation of formal reports).

Mr. Celio alleges that Agent Fiore taped an interview of him during the December 11, 2000 search. The evidence shows that Agent Fiore generated only a written report and that the report was produced to the defense. (*See* Trial Transcript Vol. V at pp. 269-70).

As to these disclosure violations alleged by Mr. Celio, the information was either previously disclosed, was irrelevant and/or not discoverable, or the government had no knowledge that the information was available. The record belies Mr. Celio's allegations. The defense received "in

excess of 10,000 pages of discovery in this case." (*See* Trial Transcript Vol. V at p. 270).  Mr. Celio

has not demonstrated a violation of *Brady*, in that he has not demonstrated that the prosecution

suppressed any evidence, that any such evidence was favorable to him, or that the evidence was

material.  Nor has Mr. Celio shown that any of the alleged nondisclosures would have altered the

result of the trial.


4.      Claim 4 Alleging Ineffective Assistance of Appellate Counsel

Mr. Celio alleges that appellate counsel, Clifford Barnard, provided ineffective assistance by:
(A) failing to present "five additional issues to Celio's claim on prosecution
misconduct" in the opening brief on appeal, and

(B) failing to raise "eight incidents in support of abuse of discretion that were objected
to by trial counsel but not raised on direct appeal."

(*See* Doc. # 537-2 at pp. 46-47, 2-4 of 47).

The mere omission of particular issues on appeal does not constitute ineffective assistance

of counsel.  "When a habeas petitioner alleges that his appellate counsel rendered ineffective

assistance by failing to raise an issue on direct appeal, we first examine the merits of the omitted

issue. If the omitted issue is meritless, then counsel's failure to raise it does not amount to

constitutionally ineffective assistance." *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir.

1999).  "If the omitted issue is so plainly meritorious that it would have been unreasonable to

winnow it out even from an otherwise strong appeal, its omission may directly establish deficient

performance. . . ." *Upchurch*, 333 F.3d at 1163-64 (internal quotation marks and citation omitted)

"On the other hand, if the omitted issue has merit but is not so compelling, . . . [we must assess]

. . . the issue relative to the rest of the appeal, and deferential consideration must be given to any

professional judgment involved in its omission." *Id.  See also Hawkins*, 185 F.3d at 1152 ("If the

issue has merit, we then must determine whether counsel's failure to raise the claim on direct

appeal was deficient and prejudicial.").  In order to establish ineffective assistance of appellate

counsel, Mr. Celio must establish "a reasonable probability of a favorable result had his appellate counsel raised the omitted issue." *Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* "[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (internal quotation marks and citation omitted).

In his Claim (A), Mr. Celio alleges that appellate counsel was ineffective for failing to raise five issues in the opening brief on appeal, raising them only in the reply brief, which resulted in the Tenth Circuit deeming them waived. *See Celio*, 230 Fed. Appx. at 828 n. 4. Appellate counsel challenged Mr. Celio's conviction on four grounds and raised eight instances of alleged prosecutorial misconduct. *See Celio*, 230 Fed. Appx. at 821, 828. Mr. Celio has not shown that appellate counsel's failure to raise five additional allegations of prosecutorial misconduct in the opening brief constituted ineffective assistance of counsel. Four of the issues involved the prosecution's statements during opening or closing arguments. (*See* Appellate Case No. 05-1330, Amended Reply Brief of Appellant Celio filed October 26, 2006 at pp. 18-20 of 29). As the Tenth Circuit noted with regard to Mr. Celio's other claims of prosecutorial misconduct that were raised on appeal, "viewed in the context of the trial as a whole, including the district court's curative actions, jury instructions, and the extent and role of misconduct within the case, the instances challenged by Celio do not rise, either individually or cumulatively, to the level of flagrant prosecutorial misconduct required for a new trial." *Celio*, 230 Fed. Appx. at 831. The same conclusion applies to the four other allegedly improper statements made by the prosecution during opening and closing arguments. The fifth issue addresses a brief statement about a former

employee who was not identified by name. (*See* Appellate Case No. 05-1330, Amended Reply Brief of Appellant Celio filed October 26, 2006 at p. 17 of 29). Agent Jaster testified that the government's investigation initially focused on that employee, and she was subsequently convicted. (*See* Trial Transcript Vol. IV at pp. 167-68). There was no further evidence about this employee. The court concludes that this brief statement in the context of a 500-page did not prejudice the result of Mr. Celio's trial and thus it was not ineffective assistance for appellate counsel to omit this argument from the opening brief.

In his Claim (B) 1), Mr. Celio alleges that appellate counsel did not challenge the district court's ruling on the second motion for mistrial. This claim is contradicted by the record. Appellate counsel raised the issue on appeal, and the Tenth Circuit ruled that "[t]he district court did not abuse its discretion when denying either of Celio's motions." *Celio*, 230 Fed. Appx. at 827. Nor may Mr. Celio raise issues in a § 2255 motion which have already been challenged on direct appeal. *See Warner*, 23 F.3d at 291.

In Claim (B) 2), Mr. Celio contends that appellate counsel should have appealed the trial court's denial of defense counsel's request to re-cross examine Agent Jaster. (*See* Trial Transcript Vol. V at p. 308). "[A] defendant's right to cross-examine witnesses is neither absolute nor unlimited." *United States v. Bindley*, 157 F.3d 1235, 1240 (10th Cir. 1998). "In reviewing a defendant's challenge to limitations on cross-examination, our role is to determine whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." *Id.* (citation omitted). Here, although the trial court denied re-cross examination, defense counsel had ample opportunity to thoroughly cross-examine Agent Jaster. (See Trial Transcript Vol. IV at pp. 243-264; Vol. V pp. 280-293). Mr. Celio's allegation that Agent Jaster's redirect examination added prejudicial testimony is incorrect, as Agent Jaster had already testified about Mr. Celio's denial of his voice on the tape during his direct examination. (See Trial Transcript Vol. IV at p. 243). Mr.

Celio's allegation that "[t]he DEA's no tape policy only further prejudice[d] him" is also meritless. During re-direct examination, Agent Jaster testified that he interviewed between 30 to 50 other witnesses, but did not tape-record these interviews. (*See* Trial Transcript Vol. V at p. 303).  As none of these other witnesses testified at trial, it was not ineffective assistance for appellate counsel to omit the DEA's "no-tape policy" on appeal.   Mr. Celio makes three additional references to testimony about "medical questions being asked of the undercover officer," a "DEA contract concerning Lu-Ann Reyes," and an affidavit having "nothing to do with Steve Compton."   Mr. Celio fails to explain the relevance or significance of these references to his claim for ineffective assistance of appellant counsel.  Mr. Celio has not shown "a reasonable probability of a favorable result had his appellate counsel raised" these omitted issues.  *Malicoat*, 426 F.3d at 1249.

Mr. Celio's Claims (B) 3) and 5) relate to statements made by the prosecution during closing arguments. In light of the court's instructions to the jury that the lawyers' arguments are not to be treated as evidence in the case,  Mr. Celio has not shown that appellate counsel's failure to contest these statements on appeal "was deficient and prejudicial."  *Hawkins*, 185 F.3d at 1152.

In Claim (B) 4), Mr. Celio alleges that appellate counsel failed to challenge "medical opinion" and legal interpretation by Agent Jaster.  The trial court permitted Agent Jaster to testify about abuse of prescription drugs. (*See* Trial Transcript Vol. IV at pp. 145-167).  "[T]he admission of lay opinion testimony [under Rule 701] is within the sound discretion of the trial court and will not be overturned on appeal absent a clear abuse of discretion."  *United States v. Sneed*, 34 F.3d 1570, 1581 (10th Cir. 1994) (internal quotation marks and citation omitted).  A lay witness may testify "in the form of opinions or inferences . . . which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  By contrast, a "witness qualified as an expert by knowledge, skill,

experience, training, or education, may testify thereto in the form of an opinion of otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."   Fed. R. Evid. 702.   To the extent that Agent Jaster's testimony is opinion evidence, the court is satisfied that the qualifications of Rule 701 were met.   "[T]he testimony of witnesses, both in civil and criminal cases, is admissible if predicated upon concrete facts within their own observation and recollection that is facts perceived from their own senses [sic], as distinguished from their opinions or conclusions drawn from such facts."   *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847-48 (10th Cir. 1979).   Based on his personal observations and experience, Agent Jaster could properly testify about abuse of prescription drugs.   Mr. Celio has not demonstrated that appellate counsel's failure to challenge on appeal Agent Jaster's testimony constituted ineffective assistance of counsel.

In Claim (B) 6), Mr. Celio alleges that the prosecution was permitted "to interject their opinion in front of the jury" when making evidentiary proffers.   Prior to trial and deliberations, the court instructed the jury that "statements, assertions and arguments of the lawyers are not to be taken as evidence in the case" and to avoid being "diverted by the lawyers' possibly suggestive statements."   (*See* Trial Transcript Vol. IV at p. 119, Vol. VI at p. 549).   In light of these curative instructions, Mr. Celio has not demonstrated that appellate counsel's failure to raise this issue on appeal was unreasonable.   Nor has Mr. Celio demonstrated any probability that these statements had a substantial influence on the outcome of the trial.   Appellate counsel's failure to appeal the prosecution's evidentiary proffers did not constitute ineffective assistance of counsel.

Claims (B) 7) and 8) relate to Mr. Celio's employment at Excel, a drug treatment and rehabilitation program, and the revocation of his bond.   These issues related to Mr. Celio's bond status and Mr. Celio has not demonstrated how they had any direct influence on the jury verdict.

Appellate counsel was not ineffective for failing to raise these issues on appeal.

In sum, appellate counsel raised four claims and eight sub-claims of error based on the sufficiency of the evidence, the jury instructions, alleged erroneous court rulings, and prosecutorial misconduct, demonstrating a thorough comprehension of the record.  *See Celio*, 230 Fed. Appx. at 821, 828.  Mr. Celio's claims of ineffective assistance of appellate counsel are meritless.

5.      Evidentiary Hearing

The court need not conduct an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(a).  *See also* Rule 8 of the Rules Governing Section 2255 Proceedings For The United States District Courts;  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (reaffirming abuse of discretion standard for review of the district court's decision not to grant an evidentiary hearing).  No evidentiary hearing is required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Arredondo*, 178 F.3d at 782 (internal quotation marks and citation omitted).  *See also Anderson*, 425 F.3d at 858-59 (holding that no evidentiary hearing is required if the applicant's allegations are contravened by the existing record).  The court has reviewed the files, records, and transcripts in the proceeding underlying Mr. Celio's conviction, as well as the pleadings, briefs, and records filed in this case.  The court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Mr. Celio is not entitled to relief on the issues raised.

Accordingly, IT IS RECOMMENDED that Mr. Celio's "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" (Doc. # 537) be DENIED and this civil action be DISMISSED WITH PREJUDICE.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116,

1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated at Denver, Colorado this 20th day of May, 2011.

BY THE COURT:


___s/Craig B. Shaffer_____
United States Magistrate Judge